CENTER MANAGEMENT CORPORA-
TION and Center City Housing,
Defendants–Appellants,

v.

Kim BOWMAN, Plaintiff–Appellee.

No. 71A03–8710–CV–279.

Court of Appeals of Indiana,
Third District.

July 28, 1988.

Rebecca Hoyt Fischer, Kramer, Butler, Simeri, Konopa & Laderer, South Bend, for defendants-appellants and for Amicus Curiae River Bend Apartment Assn.

Mitchell R. Heppenheimer, South Bend, for plaintiff-appellee.

HOFFMAN, Judge.

Defendants-appellants Center Management Corporation and Center City Housing appeal a trial court judgment in favor of plaintiff-appellee Kim Bowman in the amount of $1,300.00 plus costs.

The evidence relevant to this appeal discloses that Bowman discovered the loss of a $50.00 bill from her apartment on February 20, 1986. The theft was reported to the South Bend police and to Center Management, the managing company of her apartment building. After an investigation the police determined that there were no signs of a forced entry. At Bowman's request the lock on her apartment door was changed by Center Management.

On February 27, 1986 Bowman discovered that four items of jewelry had been stolen from her apartment. A second investigation by the police revealed that entry had been gained apparently by a key.

In July 1986 Bowman brought a small claims court action against Center City, the owner of the apartment; and Center Management, the managing company was added as a party later. Bowman claimed agents of defendants had gained entry into her apartment to commit the burglaries by use of a master key and that the defendants had breached a duty owed to her as a tenant.

In August 1987 after a trial, the court ruled that the defendants were jointly and severally liable for the loss.

On appeal Center Management and Center City raise two issues for review:

(1) whether the trial court erred in determining that the defendants' actions were a proximate cause of Bowman's loss; and

(2) whether the trial court's decision is supported by sufficient evidence.

The parties and amicus do not refer this Court to any cases in Indiana discussing the possible liability of a landlord for negli-

gence when a tenant's property is damaged or stolen under circumstances similar to those in the present case. What duty, if any, should be imposed on a landlord has been addressed by the courts of several states. While those decisions are not binding upon this Court, they are instructive.

■ Many courts have abrogated or softened the common-law rule that a landlord is not under a duty to protect a tenant from loss or injury due to criminal conduct by a third party.

*See Cutler v. Bd. of Regents* (1984), Fla. App., 459 So.2d 413 (normally no duty by reason of landlord-tenant relationship, but landlord may assume duty to protect tenants from foreseeable criminal acts); *Razdan v. Parzen* (1981), 157 Ga.App. 848, 278 S.E.2d 687 (general rule that independent criminal act of third person insulates original wrongdoer from finding of negligence inapplicable if original wrongdoer had reasonable grounds for apprehending criminal conduct, i.e., the criminal act was reasonably foreseeable); *Trentacost v. Brussel* (1980) 82 N.J. 214, 412 A.2d 436 (landlord's failure to provide locks and evidence of criminal activity rendered mugging of tenant foreseeable result of landlord's negligence); *Stribling v. Chicago Housing Authority* (1975), 34 Ill.App.3d 551, 340 N.E.2d 47 (plaintiff's complaint that housing authority allowed unrestricted access to vacant apartments adjoining plaintiff's apartment resulted in series of burglaries at plaintiff's apartment stated cause of action in that duty may exist if occurrence is reasonably foreseeable and there exists more than a mere possibility of the occurrence).

In *Morgan v. Dalton Management Co.* (1983), 117 Ill.App.3d 815, 73 Ill.Dec. 313, 316, 454 N.E.2d 57, 60 the court announced three considerations when determining whether a duty would exist: 1) the foreseeability of the injury, 2) the magnitude of the burden of guarding against the injury, and 3) the consequences of placing that burden upon the defendant. The considerations outlined in *Morgan* present a practical method of determining the existence of a duty by a landlord under circumstances similar to those in the present case.

■ In this case the second burglary was reasonably foreseeable. The defendants had notice of the first burglary and the probable method of entry by use of a key. However, defendants claim that the consequences and magnitude of the burden to guard against another such occurrence were prohibitive. The defendants contend that terminating their employees' use of the master keys would completely disrupt if not halt their system of maintenance and repairs.

The record reflects that the defendants acknowledged that twelve of their employees and an unknown number of employees of a carpet cleaning company enjoyed the use of the master keys. Defendants ignore the possibility that access to master keys could be greatly restricted and monitored for the protection of the tenants. By allowing such a large group of persons unquestioned access to the master keys, the defendants effectively thwarted any attempt to determine who perpetrated the first burglary and to reduce the risk of further burglaries. Because the second and third considerations in determining the existence of a duty would not impede such a finding, the trial court correctly determined that a duty existed in the present case. Further, once the duty was established, the evidence supported a conclusion that the breach of that duty proximately caused the injury to Bowman.

■ Next, the defendants question the sufficiency of the evidence to support the court's decision. It is well settled that this Court will not reweigh evidence or judge the credibility of witnesses. *Communication Wkrs., L. 5900 v. Bridgett* (1987), Ind. App., 512 N.E.2d 195, 200. Only the evidence and reasonable inferences therefrom which would support the verdict may be considered. *Bradford v. Bentonville Farm Supply* (1987), Ind.App., 510 N.E.2d 745, 747.

The evidence demonstrated that the police could not discover any method of forced entry into Bowman's second-floor apartment, but surmised that a key must

have been used. Bowman testified that she had not given her apartment key to anyone and that she always locked her doors. The defendants' employee testified that all maintenance workers had access to master keys and that Bowman had notified her of the first burglary and accused a specific maintenance worker of the crime. Other evidence established that a portion of Bowman's missing jewelry was discovered at a pawn shop where one of defendants' employees frequently sold jewelry. Additionally, police officers testified that other burglaries absent signs of forced entry had occurred at the apartment complex.

Defendants complain that other means of entry, such as picking the lock, may explain the burglary. Defendants' argument is speculative and not supported by the record.

The trial court based its judgment on sufficient evidence, and because no error has been established the trial court is affirmed.

Affirmed.

STATON and NEAL, JJ., concur.