## A93A1374. WALLACE et al. v. BOYS CLUB OF ALBANY, GEORGIA, INC.
### (439 SE2d 746)

Pope, Chief Judge.

Plaintiffs, a child and his parents, appeal from the trial court's grant of summary judgment for defendant Boys Club.

We view the evidence in the light most favorable to plaintiffs as the non-movants on a motion for summary judgment. Jonquary Wallace, a five-year-old boy,[1] participated in defendant's summer day camp program. Defendant's employees testified that the boys in the program were to be under the direct supervision of an adult staff person at all times. There was also testimony that a desk by the front door was manned at all times, and that the staff person at that desk should not have permitted a young child to just walk out the door. Nonetheless, one day Jonquary was able to walk out the front door and go around the building to look at the swimming pool without adult accompaniment. He was then abducted and assaulted. Defendant's staff did not notice his absence until Jonquary's older brother brought it to their attention. A search proved fruitless until someone heard that a young boy had been found in the woods by the police, and that young boy turned out to be Jonquary. About a month before Jonquary's abduction and assault, defendant called Jonquary's parents and told them Jonquary was missing. After a thorough search of the premises, Jonquary was found asleep in a small room in the library. Jonquary's parents expressed concern about defendant and its security procedures at that time. When two of defendant's employees reassured them and promised them that the staff would watch Jonquary and keep track of his whereabouts, however, Jonquary's parents allowed him to continue to attend the camp.

Plaintiffs sued defendant for negligence in its supervision of Jonquary. The trial court granted summary judgment, utilizing a premises liability analysis and stating that a heightened standard of care did not result from defendant's undertaking to supervise the child because "[t]here is no evidence of reliance by the parents of Jonquary Wallace on any promise by the defendant to protect Jonquary from

---

[1] Boys Club membership is limited to boys of ages six through eighteen, and Jonquary's application indicated that he was six even though he was five. However, there is evidence that Club personnel knew Jonquary was actually five years old and nonetheless allowed him to attend as a member and participate in Club activities.

the criminal acts of third persons."

1. Plaintiffs argue that the trial court erred in treating this as a premises liability case rather than one involving negligence in the supervision of a child of tender age. We agree. Thus, the applicable duty of care is that set forth in *Laite v. Baxter*, 126 Ga. App. 743, 745-746 (2) (191 SE2d 531) (1972): " '[T]he measure of duty of a person undertaking control and supervision of a child to exercise reasonable care for the safety of the child is to be gauged by the standard of the average responsible parent; such person is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard.' [Cit.] 'The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances.' [Cit.] 'As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury. Such person is not an insurer of the safety of the child. He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm.' [Cit.]" See also 57 AmJur2d, Negligence, § 204. Applying this standard to the facts of this case, we conclude that a material issue of fact exists regarding whether a prudent person caring for a five or six-year-old child under similar circumstances would have allowed the child to leave the building without an older person, and thus whether defendant breached its duty of care. See also *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (3) (394 SE2d 345) (1990) ("even in premises liability cases, the age of the injured person is relevant," and landowner may be held to higher standard of care toward a child than toward an adult).

Moreover, there is evidence that defendant undertook to ensure that Jonquary was under the direct supervision of an adult at all times and that a child of his age would not leave the building unattended or unquestioned. And contrary to the trial court's statement in its order granting summary judgment for defendant, there is evidence that defendant promised to watch Jonquary and keep track of his whereabouts, and that Jonquary's parents relied on that promise. When one promises to do something and another reasonably and foreseeably relies on that promise, the promisor has a duty to perform the promised act in a non-negligent manner. *Mixon v. Dobbs Houses*, 149 Ga. App. 481 (254 SE2d 864) (1979). Accordingly, the duty imposed on defendant in this case is not only the general legal duty owed by anyone who undertakes the care of a child but also the duty arising from defendant's policies, its promises to Jonquary's parents to enforce those policies and Jonquary's parents' reliance on those promises. See also *McGarr v. Baltimore Area Council, Boy Scouts*,

536 A2d 728, 734 (Md. Ct. Spec. App. 1988).

2. Defendant contends that even if it was negligent in its supervision of Jonquary, its liability for that negligence was cut off by the intervening criminal act of a third party because that intervening criminal act was unforeseeable. Because it is undisputed that no substantially similar criminal act had occurred in or around the Boys Club prior to this one, defendant argues Jonquary's abduction and assault were unforeseeable as a matter of law. See *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (409 SE2d 848) (1991). *Savannah College* is a premises liability case, however, and even if a specific showing of a prior similar act on a defendant's premises is required in a premises liability case,[2] it is not required in a case involving liability for the negligent supervision of a child. In a premises liability case the landowner can only be held liable for what occurs on the premises. Thus, in order to hold the landowner liable despite the intervening criminal act of a third party, the plaintiff must show that the landowner had notice of a danger specific to the premises. In the case of negligent supervision of a child, however, what is reasonably foreseeable is not exclusively dependent upon what is known about a specific place. The danger is not only what may happen at a specific place but what may happen to any child at any place, given that children are mobile and may, as in this case, wander away from the place where they are supposed to be if they are not adequately supervised. What is at issue in a case alleging negligent supervision of a child is whether the danger of the type of harm the child suffered was reasonably foreseeable. Accordingly, the fact that no similar act had previously occurred on or near the defendant's premises is not dispositive of the issue of whether a jury could conclude the defendant had notice that the danger of abduction and assault existed in regard to a five or six-year-old child who wandered away from defendant's premises without adult supervision.

Based on the foregoing, we cannot rule that the intervening criminal act was unforeseeable as a matter of law. One has only to read

---

[2] Although *Savannah College* and other premises liability cases are often read to suggest that a plaintiff must *always* show a prior similar incident on the landowners' premises to establish that a danger was foreseeable, we note that *Savannah College* does not hold that such a specific showing is always required. An absolute requirement of this nature would create the equivalent of a "one free bite rule" for premises liability, even if the landowner otherwise knew that the danger existed. Evidence of a prior substantially similar act is one way to establish notice and foreseeability, and in most cases it will be the only possible way to do so. It is conceivable, however, that a danger could be so obvious that an issue for jury determination could exist regarding notice and/or foreseeability despite the absence of a prior similar incident on those premises. And in some cases the defendant may even acknowledge that it knew of the specific danger. In *Savannah College*, the danger was not so obvious and there was no other evidence to create an issue of fact as to the foreseeability of the danger at issue.

the daily newspapers, or even the reported cases of this court, to appreciate the prevalence of child abduction and abuse in our society. Perhaps no child has ever been struck by a car on the street near defendant's premises or drowned in the nearby swimming pool, but these dangers are so obviously foreseeable that an unforeseeability argument could not reasonably be made concerning these dangers to an unsupervised child. Likewise, simply because no child had ever been the victim of abduction and assault near the defendant's premises does not establish, as a matter of law, that such a danger to an unsupervised child of tender years is unforeseeable in this day. Though we wish it were otherwise, a jury could reasonably find that the abduction and abuse of young children who are not properly supervised is foreseeable and is one of the dangers parents and other care givers expressly protect children from by providing them proper supervision and care. That the danger in this case arose from criminal misconduct is irrelevant if it is foreseeable; the law cannot ignore the reality of what is commonly known to all who care for children. See *Wallace v. Der-Ohanian*, 18 Cal. Rptr. 892 (Cal. Dist. Ct. App. 1962).

*Judgment reversed. McMurray, P. J., Beasley, P. J., Cooper, Johnson and Smith, JJ., concur. Blackburn, J., concurs specially. Birdsong, P. J., and Andrews, J., dissent.*

BLACKBURN, Judge, concurring specially.

I generally agree with the majority opinion that this action involves a claim for negligent supervision of a child, rather than a proprietor's liability to a patron for the criminal acts of a third party, and that a jury question exists as to duty of care assumed and breached by the defendant. However, I would further find that the criminal act perpetrated against the unsupervised child in this case was foreseeable as a matter of law.

A primary purpose of supervising a child is to protect the child from harm. A child of tender years is especially vulnerable to a host of hazards to which he or she may be exposed or which he or she may create in the absence of supervision, control and protection. Some of those hazards are commonplace and obvious, such as the dangers presented by crossing a street, exposure to the elements, getting lost, climbing a tree, playing with fire, or even a dog bite. Such dangers are within the general course of human probabilities, and if an unsupervised child suffered an injury as a consequence of being subjected to one of these risks, any argument that the danger was unforeseeable would not stand. Likewise, the risk of a criminal act being perpetrated against a child is one of the harms from which a child must be protected by one assuming care and control of the child. It is unnecessary to prove that the specific criminal act was foreseeable where a duty exists to protect a child from general criminal acts. Any

argument that it is unforeseeable that a child of tender years who is allowed to wander off may fall prey to a predator violates reason, nature, common sense and the very substance of the duty of care owed to the child.

In a cause of action based upon the negligent failure to supervise a child, after the duty to supervise has been established, the most critical question is whether the child was exposed to and injured by one of the general types of harm which supervision is intended to guard against in the first place, and to which the child would not have been subjected in the absence of the failure to supervise. The risk of criminal harm to one's child tops the list of indisputable hazards from which parents attempt to protect their children by supervision. With what risk would one replace this concern and from what list would it be excluded? "Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability, not foreseeability as to the particular harm but that some harm would occur." (Citations and punctuation omitted.) *Brandvain v. Ridgeview Inst.*, 188 Ga. App. 106, 115 (373 SE2d 265) (1988). Foreseeability is usually a question for the jury, but in "plain, palpable and undisputable" cases, the issue may be decided as a matter of law. *Knudson v. Lenny's*, 202 Ga. App. 85 (413 SE2d 258) (1991). In the instant case, I believe that the foreseeability of the risk of criminal harm to the unsupervised child may be decided affirmatively as a matter of law as there could be no other conclusion under the facts of this case.

BIRDSONG, Presiding Judge, dissenting.

The majority has attempted to create a rule of law that vests upon all who supervise another's child an obligation so stringent in *application* that such supervising person or entity becomes in effect an *insurer* for the safety of such child; I am compelled to dissent. By dramatically extending the *range* of foreseeability of all who supervise children, the majority has increased the potential for liability of all who supervise children whether such be undertaken for profit, civic duty, or mere personal accommodation borne of neighborly compassion.

Bad facts spawn bad law; the facts of this case (to the extent adequately developed in the record) are bad! This child suffers the effects of a horrible crime caused by the depraved misconduct of a third party. Bad and painful things happened to this innocent little boy. Thus, the majority understandably strives to justify its disposition of this matter — unfortunately by reaching in several instances beyond the pale of the official record. For good reason, this court has opined repeatedly that the appellate process affords no latitude to make adjustments either for the ill-earned good fortune of the lucky or for the heart-rending misfortune of the unlucky. *First Financial*

*Ins. Co. v. Rainey*, 195 Ga. App. 655, 664 (394 SE2d 774). I am concerned that a majority of my colleagues has disposed of this case by inadvertently making "adjustments."

1. The majority claims it is construing the evidence most favorable to the plaintiffs as the nonmovants on a motion for summary judgment. However, in doing so an appellate court cannot ignore statutory requirements. OCGA § 9-11-56 (e) requires, in effect, that the medium used to present evidence either in support or opposition to a motion for summary judgment (e.g., affidavit, deposition, answers to interrogatories) "set forth such facts as would be admissible in the evidence." Thus hearsay evidence, being without probative value for any purpose with or without objection at trial, cannot be considered in disposition of a summary judgment motion, unless it is part of the res gestae. See *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2 a) (397 SE2d 576). Further, "[i]n response to a motion for summary judgment, the non-moving party may not rest on generalized allegations, but must come forward with *specific facts* to show that there is a genuine issue for trial." (Emphasis supplied.) *Precise v. City of Rossville*, 261 Ga. 210, 212 (3) (403 SE2d 47).

There is no deposition or affidavit from the victim included in this record. In fact, there exists no eyewitness account as to how specifically, when specifically, or why specifically the child vanished from the Boys Club. The statement of facts, recited in the majority opinion, as to how and why the child departed the premises, at best, are based on speculations of witnesses. An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. *Green v. Sams*, 209 Ga. App. 491, 498 (1) (433 SE2d 678). Further, negligence is not to be presumed, but is a matter for affirmative proof; the mere fact of injury or damage does not give rise to a presumption or inference of negligence; and, in the absence of affirmative proof of negligence, we must presume the performance of duty and freedom from negligence. *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 600 (2) (431 SE2d 383).

Applying the duty of care of *Laite v. Baxter*, 126 Ga. App. 743 (2) (191 SE2d 531), the majority concludes that, based on facts perceived by them to have been adequately established, a genuine issue of material fact exists as to appellant's duty and breach thereof. Pretermitting whether *Laite v. Baxter*, supra, or the premises liability standards for "active negligence" of *Wade v. Mitchell*, 206 Ga. App. 265 (2) (424 SE2d 810) apply and whether a genuine issue of material fact as to the issues of duty and breach exist is whether a genuine issue of material fact exists as to *causation.*

Two distinct legal theories are involved in questions of causation; theories of direct causation and proximate cause. As to proximate cause, the inquiry is not whether the defendant's conduct constituted

a cause of the injury, but whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery; even where a defendant is negligent, if other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote and contingent to be the basis of a recovery. *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 393 (4) (394 SE2d 345). Proximate cause in law has been aptly described as a limit on legal liability; it is a policy decision that for a variety of reasons (e.g., intervening act) the defendant's conduct will be deemed too remote in relation to plaintiff's injuries to support recovery. *Atlanta Obstetrics &c. v. Coleman*, 260 Ga. 569 (398 SE2d 16). For reasons hereinafter discussed, I believe that there exists no genuine issue of fact necessary to support a finding of proximate cause.

2. In my view, the majority has engaged in a radical departure in its application of principles of foreseeability, thereby making those who supervise children in effect *insurers* for their charges' safety. Further, this is accomplished notwithstanding the contrary expressions of *Laite v. Baxter*, supra, and *Riley v. Brasunas*, 210 Ga. App. 865 (438 SE2d 113).

Although usually arising in premises liability cases, this state has a well-established body of law pertaining to the foreseeability of acts of criminal conduct committed during the intervention of a third party. The majority has chosen not to apply this law but rather to forge a new standard as to foreseeability in child supervision cases, apparently relying on secondary authority — the opinion of a California intermediate appellate court. Although I have the strongest feelings of compassion and sympathy for the victim in this case, I cannot follow the uncharted course set by my colleagues.

In this case, the victim's injuries were directly caused by the criminal acts perpetrated upon him by a third party. Also, as must be conceded by the majority, there exists not one shred of evidence of any similar violent criminal sexual attack at or near the Boys Club; there exists no evidence of any type of violence at or near the Boys Club, sexual or otherwise. Further, the record does not establish that the Boys Club knew or reasonably should have known of the sexual proclivities of the victim's assailant. Nevertheless, the majority concludes, *as a matter of judicial policy regarding the issue of proximate cause*, that a specific supervisor of children must foresee all forms of intervening child abuse and related criminal conduct merely because the majority deems it a matter of general public knowledge that children have been the subjects of abduction and abuse by third parties, albeit such criminal interventions may have occurred under a variety of dissimilar circumstances and at other times and other places. The majority attempts to justify this position by stating that "[o]ne has only to read the daily newspapers, or even the reported

cases of this court, to appreciate the prevalence of child abduction and abuse in our society." While there have been numerous reported incidents of a variety of child abuse cases (far more often committed by parents, relatives or family friends of a victim than by strangers abducting the child), can it be legitimately concluded that such conduct is now "prevalent" in our society? I think not. Is the local Sunday School teacher in a relatively crime-free, rural community now required reasonably to foresee that a child who physically strays from the fold will be abducted from church property even though no similar acts have ever occurred previously in that community? It would seem so, if all that is required is a general finding, notwithstanding the state of the trial record, that child abuse and abduction appears to be prevalent in our society. Additionally, the majority states, "[t]hough we wish it were otherwise, a jury could reasonably find that the abduction and abuse of young children who are not properly supervised is *foreseeable* and is one of the dangers *parents and other care givers* expressly protect children from *by providing* them *proper supervision and care*." (Emphasis supplied.) The potential for expansion of parental and volunteer care giver liability posed by this broad language is self-evident. I cannot join in such a holding.

The majority discounts the precedent of *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (409 SE2d 848), requiring a specific showing of similar acts on or near the premises, as being a rule applicable only to premises liability cases. While not conceding that premises liability law does not here pertain, I believe that the general rules pertaining to foreseeability of third-party criminal intervention are not limited in application to premises liability cases. In *Rosinek v. Cox Enterprises*, 166 Ga. App. 699 (305 SE2d 393), appellant sought to recover for the alleged negligence of appellee in delivering papers when appellant was not at home thereby increasing the risk of burglary to her subsequently burglarized home. In *Rosinek*, this court applied the general rule of third-party criminal intervention, thus: "Generally, an intervening criminal act of a third-party, without which the injury would not have occurred, will be treated as the proximate cause of the injury, thus superseding any negligence of the defendant; however, if the criminal act was a reasonably foreseeable consequence of the defendant's conduct, the causal connection between that conduct and the injury is not broken." Id. at 700; compare *Gafford v. Duncan*, 210 Ga. App. 350 (436 SE2d 78) (physical precedent only). The similarity rule employed in *Savannah College*, supra, is well established. Compare *Ashley v. Balcor Property &c.*, 205 Ga. App. 590 (423 SE2d 14) and cases therein cited; *Nalle v. Quality Inn*, 183 Ga. App. 119 (358 SE2d 281). In *Savannah College*, supra at 766, the Supreme Court concluded, citing *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 70 (378 SE2d 323), that "[i]n light of the dearth of evidence of the

occurrence of prior *substantially similar* incidents, the college was entitled to summary judgment because there was no evidence sufficient to create a factual issue as to whether the college knew or should have known that its dormitory residents were at risk of a violent criminal sexual attack." In *Adler*, supra at 70, this court in upholding grant of summary judgment observed that " ' "[w]hile the relevancy of other occurrences is ordinarily within the sound discretion of the court, 'it is necessary that the conditions of the things compared be substantially similar.' [Cit.] Without a showing of substantial similarity, the evidence is irrelevant as a matter of law and there is nothing upon which the court's discretion can operate. . . ." *McCoy v. Gay*, 165 Ga. App. 590, 592 (302 SE2d 130).' " This rule, as adopted from *McCoy*, supra, can be directly traced to an appellate ruling in a personal injury action appeal in *Carlton Co. v. Poss*, 124 Ga. App. 154, 155 (3) (183 SE2d 231), aff'd *Poss v. Carlton Co.*, 228 Ga. 402 (185 SE2d 803). The similarity rule is not restricted in scope merely to premises liability cases; it is a separate rule operating as a part of the body of law concerning foreseeability in third-party (criminal) intervention cases.

As in *Adler*, supra at 69, it is " ' "[n]ot what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen," that is the key whether a jury issue arises as to the issue of proximate cause in situations involving intervening third-party criminal activity. This result is consistent with the long-standing rule that " 'one is not ordinarily charged with the duty to anticipate acts mala per se.' " *Hercules, Inc. v. Lewis*, 168 Ga. App. 688, 689 (309 SE2d 865). In this case, defendant/movant produced evidence establishing the existence of intervention in the form of third-party criminal activity, this evidence was sufficient to overcome plaintiff's pleadings, under the basic rule that liability generally will not occur when injury is due to the criminal misconduct of others. Having discharged its duty in summary judgment cases, under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), the nonmoving appellants were required to "point to specific evidence giving rise to a triable issue" — in this situation, a triable issue as to proximate cause. Appellants, in my view, failed to carry their burden under *Lau's*, supra, and have failed to do so regardless of whether the "similarity rule" is here applicable. Questions of proximate cause and foreseeability may and should be decided as questions of law in clear and palpable cases. *Atlanta Gas Light Co.*, supra at 393.

I respectfully dissent. I am authorized to state that Judge Andrews joins in this dissent.

Decided December 3, 1993 —
Reconsideration denied December 20, 1993 —

*Andrew M. Scherffius III, Tamara M. Ayres, James C. Brim, Jr.,* for appellants.

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, Marvin D. Dikeman,* for appellee.